UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JKL IP COMPANY LLC, et al.,

    Plaintiffs,

vs.

CREATIVE FORCES GROUP,
INC., d/b/a TUMMY AID, et al.,

    Defendants.
_____/

Case No. 16-11941
Hon. Mark A. Goldsmith

**OPINION & ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS' AMENDED MOTION
TO DISMISS, TRANSFER, AND COMPEL ARBITRATION (Dkt. 9)**

This is a patent infringement case. Defendants' motion to dismiss, transfer, and compel arbitration (Dkt. 9) argues that this Court lacks specific personal jurisdiction over Defendants and that venue in this Court is not appropriate, such that transfer should be ordered under 28 U.S.C. § 1404 and/or 28 U.S.C. § 1406. For the reasons that follow, this case will be transferred to the United States District Court for the Central District of California.

**I. BACKGROUND**

Plaintiffs are JKL IP Company, LLC ("JKL") and The Caden Companies d/b/a Belly Bandit ("Belly Bandit"). Belly Bandit designs, markets, sells, and distributes maternity wear and "shapewear" items used before, during, and after pregnancy. Compl. ¶ 3. JKL owns the intellectual property used by Belly Bandit, such as trademarks and patents. Id. ¶ 4. Plaintiffs allege that the "Tummy Aid" product, which is sold and distributed by Defendants, infringes on their patent for Belly Bandit's product, because both are compression belts designed for post-pregnancy healing.

1

JKL is a Michigan LLC, which has its principal place of business in Birmingham, Michigan. Id. ¶ 1. Belly Bandit is a California corporation, which has its principal place of business in Sherman Oaks, California. Id. ¶ 2.

Defendant Creative Forces Group Inc. d/b/a Tummy Aid ("Tummy Aid") is a California corporation whose alleged principal place of business is in South Gate, California. Id. ¶¶ 6-7. Defendant Xochitl Medina is Tummy Aid's principal; she is an individual who resides in Los Angeles, California. Id. ¶¶ 9-10; Medina Aff. at 2 (Dkt. 17). Defendant Alina Havandjian is a shareholder of Tummy Aid, and she resides in Beverly Hills, California. Compl. ¶ 18; Havandjian Aff. at 2 (Dkt. 16). Defendant Pixior, LLC, is a California association whose alleged principal place of business is in Commerce, California. Compl. ¶ 8. Defendant Yassine Amallal is a "member/principal" of Pixior who resides in Beverly Hills, California. Id. ¶ 11; Amallal Aff. at 2 (Dkt. 15).

The municipalities of South Gate, Los Angeles, Commerce, Beverly Hills, Sherman Oaks, and Venice are all located in Los Angeles County, which is in the Western Division of California's Central District. See Jurisdiction Map for the Central District of California, available at https://www.cacd.uscourts.gov/jurisdiction (accessed Dec. 6, 2016).

The complaint alleges that both Plaintiffs and all Defendants "conduct[ ] business throughout the United States, including in Michigan." Id. ¶¶ 5, 9, 11, 12, 26. One specific Michigan-based transaction is alleged in the complaint: Defendant Tummy Aid allegedly solicited business from "Ruby's Balm," a retailer in West Bloomfield, Michigan, and shipped several of its products to Ruby's Balm for resale. Id. ¶¶ 22-23. Pixior provided warehouse and shipping services to Tummy Aid and shipped the products to Michigan. Id. ¶ 25.

According to Defendants' affidavits, they have never set foot in Michigan, nor do they have bank accounts or property in Michigan; their products are designed and manufactured in California; the lone identified shipment to Michigan was for "a paltry $200, and no other sales to Michigan customers have ever been made"; Defendant Tummy Aid did not, in fact, solicit the business of that Michigan store; and Defendant Pixior has no Michigan clients. See Defs. Mot. at 5 (summarizing affidavits, Exs. C-E to Defs. Mot. (Dkts. 9-4 to -6). Plaintiffs do not contest Medina's affidavit's assertion that Tummy Aid did not solicit the business of the Michigan retailer, apparently abandoning their original position that such solicitation occurred, Compl. ¶ 23. See generally Defs. Resp. (Dkt. 11).

The merits of the core patent infringement claim are not at issue in this motion with one exception: Plaintiffs allege that "Amallal used Pixior as a mere instrumentality to commit fraud and other wrongful acts against Belly Bandit" when Pixior refused to ship Belly Bandit's products in order to (i) extort money from Belly Bandit and (ii) provide a competitive advantage to Tummy Aid. See Compl. ¶¶ 167-171. Plaintiffs assert that this conduct — as well as their allegation that Tummy Aid was formed "for the sole purpose of unfairly competing with Belly Bandit" — justifies piercing the corporate veil. See Pls. Resp. at 11-12.

## II. STANDARD OF DECISION

In evaluating a motion to transfer brought under § 1404, "[t]he Court may examine facts outside the complaint, but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." Audi AG v. Izumi, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002). "A transfer is not appropriate if the result is simply to shift the inconvenience from one party to another." Id. at 1023. District courts have broad discretion to determine when party

convenience or the interest of justice make a transfer appropriate under § 1404. Reese v. CNH Am. LLC, 574 F.3d 315, 320 (6th Cir. 2009).

On a motion to dismiss for improper venue under 28 U.S.C. § 1406, the plaintiff bears the burden of proving that venue is proper. Audi AG & Volkswagen of America, Inc. v. Izumi, 204 F.Supp.2d 1014, 1017 (E.D. Mich. 2002). The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff. Id.; see also Kerobo v. Sw. Clean Fuels, Corp., 285 F.3d 531, 538 (6th Cir. 2002) (Fed. R. Civ. P. 12(b)(3) motion to dismiss is appropriate procedural vehicle by which to challenge improper venue). If the court finds that venue is improper, the case may be dismissed or transferred to the district in which it could have been brought. 28 U.S.C. § 1406(a). "[W]hether to dismiss or transfer is within the district court's sound discretion." First of Mich. Corp. v. Bramlet, 141 F.3d 260, 262 (6th Cir. 1998).

### III. DISCUSSION

Defendants argue that specific personal jurisdiction is lacking and, in the alternative, that venue is improper under 28 U.S.C. §§ 1404 and 1406. Because this Court agrees with Defendants' venue arguments, it declines to reach the personal jurisdiction argument.

**A. Venue Should Be Transferred Pursuant to 28 U.S.C. § 1404(a)**

Section 1404(a) governs so-called "permissive transfers" of venue. That statute provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

A court considering a § 1404(a) motion must "evaluate both the convenience of the parties and various public-interest considerations." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 581 (2013). Specifically, the factors to be considered by the Court in

4

ruling on a § 1404(a) motion are: (i) the convenience of the parties, (ii) the convenience of the witnesses, (iii) the relative ease of access to sources of proof, (iv) the availability of process to compel attendance of unwilling witnesses, (v) the cost of obtaining willing witnesses, (vi) the practical problems associated with trying the case most expeditiously and inexpensively, and (vii) the interests of justice. See Int'l Show Car Ass'n v. Am. Soc. of Composers, Authors & Publishers, 806 F. Supp. 1308, 1310 (E.D. Mich. 1992).

Defendants' brief argument in favor of permissive venue transfer claims that "the only person for whom Michigan is a convenient forum is Plaintiffs' counsel . . . whose office is in Farmington Hills[,] [Michigan]." Defs. Mot. at 19. Plaintiffs' counsel is the registered agent of JKL. See JKL LLC Details, Michigan Licensing & Regulatory Affairs, Ex. B to Defs. Mot. (Dkt. 9-3). Every party and defense counsel, says Defendants, would have to travel 2,300 miles to attend court. See Defs. Mot. at 19.

Plaintiffs' counter-argument declines to argue that Michigan is a convenient forum; instead, Plaintiffs argue that Michigan is not prohibitively inconvenient. See Pl. Resp. at 13. For example, Plaintiffs assert that the sources of proof in this case are largely electronically accessible; that the parties likely will only incur travel costs in the event of a trial; that this Court has discretion to permit participation in conferences and hearings via teleconference; that the costs of trying the case in either location will be similar; and that "it will likely be no more difficult to compel attendance of an out of state witness than it is to compel attendance for an unwilling in-state witness." Id.

Every single factor weighs in Defendants' favor, or is otherwise neutral. The simple facts are that most of the evidence and likely witnesses are located, and all of the pertinent events (except for the undisputed purchase by a Michigan retailer) took place, in California. And all of

the parties, save Plaintiff JKL, are located in California. Accordingly, transfer would serve (i) the convenience of the parties, (ii) the convenience of the witnesses, (iii) convenient access to sources of proof; and (iv) the cost of obtaining willing witnesses.[1]

Regarding "the availability of process to compel attendance of unwilling witnesses," both this Court and the Central District of California are able to compel the attendance of domestic witnesses, making this factor neutral. See Tuna Processors, Inc. v. Hawaii Int'l Seafood, Inc., 408 F. Supp. 2d 358, 361 (E.D. Mich. 2005).

As a matter of common sense, however, a witness is more likely to be "unwilling" if he is asked to travel from California to Michigan than if he is asked to drive to a courthouse down the street. That common-sense consideration bears on the factor of "the practical problems associated with trying the case most expeditiously and inexpensively." Furthermore, conducting motion practice and a trial so far from the locus of the suit will inject scheduling conflicts, financial burdens, and other inconveniences that will be greatly reduced, if not avoided altogether, by transferring this case. And, notably, this Court, in its discretion, disfavors conducting hearings telephonically.

This leaves the final factor: the interests of justice. "[P]ublic-interest concerns, such as systemic integrity and fairness, . . . come under the rubric of 'interests of justice.'" Moses v. Bus. Card Exp., Inc., 929 F.2d 1131, 1137 (6th Cir. 1991). Among these public-interest

---

[1] At oral argument, Plaintiffs raised the brand-new argument that testimony from the owner of the Michigan retailer would be central to their case, therefore making a transfer to California inconvenient for that "key witness." But that argument does not jibe with Plaintiffs' theory of the case. Until oral argument, the sale to Ruby's Balm was purported to establish jurisdiction in this Court, as well as to establish the fact that infringement was consummated in the form of a sale, see Compl. ¶¶ 22-23, 78. The first purpose — establishing jurisdiction — has no relevance to Plaintiffs' subsequent prosecution of their case. And the second purpose — establishing that an allegedly infringing product was actually sold — is already achieved; Defendants concede the sale of particular products to Ruby's Balm (Dkt. 9-7). Plaintiffs have failed to identify any potential issue of fact to which the retailer's testimony will be relevant.

concerns are "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." Atl. Marine Const. Co., 134 S. Ct. at 581 n.6 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)). "The primary local-interest considerations are the parties' connections to the local forum and the location of the injury." Hefferan v. Ethicon Endo-Surgery Inc., 828 F.3d 488, 500 (6th Cir. 2016). "[T]he legal situs of an injury under patent law [is] the place of the sale of the infringing good." Glasstech, Inc. v. TGL Tempering Sys., Inc., 50 F. Supp. 2d 722, 726 (N.D. Ohio 1999) (citing Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1572 (Fed. Cir. 1994)).

Transferring this case to the Central District of California serves the interests of justice. Although the alleged injury, which occurred when Defendants' product was sold to a Michigan retailer, occurred here, the parties otherwise have a minimal connection to this forum. There exists a single resident party — here, JKL — but Plaintiffs never explain the involvement of JKL in their business, other than its status as a passive owner of the intellectual property used by Belly Bandit. Without knowing anything about JKL, it is impossible to discern how it has a relevant "connection" to this forum beyond its mere presence here. And, in any case, any connection is offset by the substantial connection of six parties to the Central District of California. Further, public-interest concerns include the interest in having the trial of a diversity case in a forum that is at home with the law, and, although this is not a diversity case, the Complaint raises several state-law claims, such as breach of contract. See Compl. ¶¶ 140-148. In that connection, Defendants make the unrebutted assertion that California law will apply to at least some aspect of this case, see Defs. Mot. at 19, with which California federal courts are

doubtless more familiar than this Court would be. Accordingly, the "interests of justice" factor is, at best, neutral. The balance of the § 1404 factors counsels in favor of a transfer.[2]

Lastly, in order to transfer a case to another venue, the movant must show that the action "might have been brought" in the transferee court in the first place. 28 U.S.C. § 1404(a). Defendants repeatedly assert that the United States District Court for the Central District of California is an available venue, and Plaintiffs never contest this fact, instead opting to argue the balances of conveniences attendant to the two venues. Arguably, by discussing whether the Central District of California was a more or less convenient forum, Plaintiffs effectively conceded that it was at least an available forum. Cf. Hoffman v. Blaski, 363 U.S. 335, 343 (1960) ("venue, like jurisdiction over the person, may be waived"). And, notwithstanding that implicit concession, all Defendants reside in the Central District of California, making both venue and general personal jurisdiction appropriate in that district. See 28 U.S.C. §§ 1391(c), 1400(b).

### B. Venue is Improper under 28 U.S.C. § 1406

In the alternative, venue in this forum is simply improper, and transfer is required. In addition to invoking § 1404, Defendants' argument for transfer of venue invokes 28 U.S.C. § 1406(a), which provides:

> (a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

---

[2] The factor of "court congestion" was not considered, as the Court was not presented with any facts that would enable it to make this factual determination. See Quicken Loans Inc. v. RE/MAX, LLC, ___ F.3d ___, No. 16-13233, 2016 WL 6681183, at *4 (E.D. Mich. Oct. 31, 2016) (declining to give weight to public-interest factors because party opposing transfer did not show applicability of any of the factors). However, even assuming that this factor favors Plaintiffs, it would be insufficient to overcome the weight of other considerations in favor of transfer.

Again, venue in patent infringement cases is governed by 28 U.S.C. § 1400(b), which provides:

> (b) Any civil action for patent infringement may be brought in [i] the judicial district where the defendant resides, or [ii] where the defendant has committed acts of infringement and has a regular and established place of business.

Defendants argue that none of them have a "regular and established place of business" in the Eastern District of Michigan, see Defs. Mot. at 16; Plaintiffs did not contest this assertion, see generally Pls. Resp. Accordingly, whether venue is appropriate in this district will be determined by Defendants' residence. See 28 U.S.C. § 1400(b).

"[Section] 1400(b) states that venue is appropriate for a patent infringement suit 'where the defendant resides' without defining what 'resides' means when the defendant is [not a natural person]." In re TC Heartland LLC, 821 F.3d 1338, 1342 (Fed. Cir. 2016). When a defendant is not a natural person, "'the general statute, § 1391(c), expressly reads itself into the specific statute, § 1400(b).'" Id. (quoting VE Holding Corp. v. Johnson Gas Appliance, 917 F.2d 1574, 1583-1584 (Fed. Cir. 1990)). This is because § 1391(c) defines an association's residence "[f]or all venue purposes." (Emphasis added.) It states:

> (c) Residency. For all venue purposes . . . (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . .

Id. § 1391(c)(2). Thus, for the defendants who are associations rather than natural persons, venue is appropriate in this district if this district has personal jurisdiction over them.

However, this Court need not inquire whether it has personal jurisdiction over the associational defendants. "In cases with multiple defendants, venue must be proper with respect to all defendants." Domino's Pizza PMC v. Caribbean Rhino, Inc., 453 F. Supp. 2d 998, 1005-

9

1006 (E.D. Mich. 2006) (citing IA, Inc. v. Thermacell Technologies, Inc., 983 F. Supp. 697, 700 (E.D. Mich. 1997)); Overland, Inc. v. Taylor, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000) (same). When venue is not proper as to all defendants, transfer under § 1406 is warranted. See TNR Indus. Doors, Inc. v. PerforMax Grp., LLC, No. 13-13815, 2014 WL 2800750, at *5 (E.D. Mich. June 17, 2014). Notwithstanding whether this Court would have personal jurisdiction over the associational defendants alone — thereby making venue proper in this district as to those defendants — the individual defendants do not fall within the reach of the patent-infringement venue statute, 28 U.S.C. § 1400(b). The individual defendants do not reside here; nor have they committed infringement here and have a regular and established place of business here. Accordingly, because venue in this district is improper as to some Defendants, it is improper as to all of them.

Perhaps recognizing the impossibility, under the terms of the patent-infringement venue statute, of establishing venue in this Court as to the individual defendants, Plaintiffs seek to bootstrap jurisdiction over those individual defendants by utilizing a piercing-the-corporate-veil theory. See Pl. Resp. at 12. That is to say, if this Court has personal jurisdiction over the associational defendants — making venue appropriate as to those defendants, see 28 U.S.C. § 1391(c) — venue will lie as to all Defendants if the corporate veil is pierced. Although Plaintiffs cite no pertinent case law, there is authority in the Federal Circuit that "[p]iercing the corporate veil is appropriate in order to establish venue under the patent venue statutes." Minn. Mining & Mfg. Co. v. Eco. Chem. Inc., 757 F.2d 1256, 1265 (Fed. Cir. 1985).

Plaintiffs allege that individual defendants Medina and Havandjian created the entity Tummy Aid "for the sole purpose of unfairly competing with Belly Bandit." Pl. Resp. at 12. Thus, claim Plaintiffs, "[t]heir conduct justifies piercing the corporate veil and holding the

individuals responsible for Tummy Aid's conduct while it was being used as a mere instrumentality of Medina and Havandjian." Id. (citing SCD Chem. Distribs. v. Medley, 512 N.W.2d 86 (Mich. Ct. App. 1994) (setting forth Michigan's veil-piercing criteria)). "In addition," say Plaintiffs, "Amallal's actions in wrongfully withholding Plaintiffs' products and shipments and extorting money from Plaintiffs in exchange for releasing Plaintiffs' products mandates individual liability for Amallal." Id.

By these allegations, Plaintiffs have not shown that piercing the corporate veil is appropriate. Michigan courts will not pierce the corporate veil unless (i) the corporate entity was a mere instrumentality of another entity or individual; (ii) the corporate entity was used to commit a fraud or wrong; and (iii) the plaintiff suffered an unjust loss. Servo Kinetics, Inc. v. Tokyo Precision Instruments Co., 475 F.3d 783, 798 (6th Cir. 2007).[3] Plaintiff's allegations go to the latter two prongs; Plaintiffs' claims that Medina, Havandjian, and Amallal caused the alleged wrongdoing is nothing more than a recognition of the fact that corporate decisions are made by human beings.

In order to satisfy the first prong, which entails an "intensively fact-driven" inquiry, see id., the proponent of veil-piercing must show something more — for instance, that the corporation's principals have done something to subvert the interests of the corporation — in

---

[3] In a case founded upon federal question jurisdiction, the Sixth Circuit generally applies the law of the forum state to a veil-piercing analysis. See ITT Corp. v. Borgwarner Inc., No. 1:05-CV-674, 2009 WL 2242904, at *5 (W.D. Mich. July 22, 2009) (collecting cases). Although the parties do not explicitly state that Michigan law should apply to the veil-piercing analysis, Plaintiffs cited a Michigan case for this argument, and Defendants only cited cases that applied Michigan law, so that is the law that the Court will apply. See Servo Kinetics, 475 F.3d at 798 ("The parties agree that this issue is governed by the law of the state of Michigan. This Court will thus apply Michigan law as determined by the Michigan Supreme Court."). While the law is unclear whether federal or state law regarding veil piercing should be applied in the patent context, see Invacare Corp. v. Sunrise Med. Holdings, Inc., No. 1:04-CV-1439, 2004 WL 3403352, at *8 & n.7 (N.D. Ohio Dec. 15, 2004), the parties' apparent agreement to the application of Michigan law makes it unnecessary to resolve that issue. See id.

order to satisfy the requirement that the corporation was used as a "mere instrumentality" of the individual. See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Aguirre, 410 F.3d 297, 302-303 (6th Cir. 2005); TNR Indus. Doors, Inc., 2014 WL 2800750, at *4 ("Plaintiff's pleadings merely imply that Markham controls the entities, but otherwise lack any meaningful legal analysis pertaining to piercing the corporate veil and utilizing the 'alter ego' theory for venue purposes. Consequently, this Court is unable to complete the proper analysis required to pierce the corporate veil."); Flagstar Bank, FSB v. Centerpointe Fin., Inc., 10-cv-14234, 2011 WL 2111984, at *6 (E.D. Mich. 2011) ("Plaintiff, however, does not describe the alleged alter ego relationship between Defendants and Centerpointe at all. Rather, Plaintiff's response simply contains the conclusory allegation that the borrowers of the mortgage loans originated by Centerpointe lied and that Defendants facilitated this fraud. This bald assertion, however, is not supported by any evidence. Furthermore, even if it were true, it would be insufficient to support the conclusion that Centerpoint is Defendants' alter-ego."); see also id. ("Plaintiff does not claim that Defendants co-mingled their personal finances with corporate assets, that Centerpointe is a sham, or that Defendants have abused the corporate form or corporate formalities. Accordingly, Plaintiff has failed to allege facts that would support piercing the corporate veil[.]"). Because Plaintiffs' allegations state no facts that support veil piercing, let alone facts sufficient to overcome the presumption of respect for the corporate form, the Court rejects this argument.

Finally, as was true of transfer under § 1404, § 1406(b) only permits transfer to a district "in which it could have been brought." For the reasons explained supra, this lawsuit could have been brought in the United States District Court for the Central District of California.

**C. There is No Arbitration Agreement to Enforce**

Finally, Defendants' motion requested an order that Plaintiffs' claims against Pixior be submitted to arbitration. See Defs. Mot. at 20-21. In support, Defendants submitted a contract signed in 2012, which, by its terms, expired on August 31, 2013. See 2012 Service Agreement § 2.1, Ex. A to Defs. Mot. (Dkt. 9-2) ("This Agreement . . . shall terminate on August 31st, 2013."). In their response, Plaintiffs pointed out that, during the relevant time period, Plaintiffs and Pixior were parties to a different contract that "does not contain an arbitration clause." Pl. Resp. at 14. This contract was attached to the complaint. See 2015 Service Agreement, Ex. C to Compl. (Dkt. 1-4).

Defendants' reply brief does not rebut this claim, and defense counsel conceded it at argument. Defendants' motion to compel arbitration is, therefore, denied.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, transfer, and compel arbitration (Dkt. 9) is granted in part and denied in part. The Clerk's Office is ordered to transfer this case to the United States District Court for the Central District of California, Western Division.

SO ORDERED.

Dated: December 6, 2016　　　　　　　　　　s/Mark A. Goldsmith  
　　Detroit, Michigan　　　　　　　　　　　　MARK A. GOLDSMITH  
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 6, 2016.

　　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky  
　　　　　　　　　　　　　　　　　　　　　　　Case Manager